UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,                          Case No. 10-20309

          Plaintiff,                          Honorable Sean F. Cox
                                      United States District Judge

v.

Anthony Robert Williams,

          Defendant.
_____/

OPINION & ORDER ADOPTING
THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

INTRODUCTION

Defendant Anthony Williams ("Defendant") is charged with one count of being a Felon in Possession of a Firearm, in violation of 18 § U.S.C. 922(g)(1). (Indictment, Doc. No. 3). The case is currently before the Court for consideration of the Magistrate Judge's Report and Recommendation ("R&R") (Doc. No. 37) regarding Defendant's Motion to Suppress Evidence. An evidentiary hearing was held on November 2, 2010, and the parties have fully briefed the issues. For the reasons that follow, the Court overrules the objections filed by the Government and shall adopt the R&R in its entirety.

BACKGROUND

A.       Factual Background

On June 11, 2009, Flint Police officers were conducting an operation as part of Project Safe Neighborhood on Woodhall Street, located on the north side of Flint, Michigan. (TR at 9, Doc. No. 32). Woodhall Street is known by police officers to be a high-crime area and an area

of regular gang activity.  *Id.*  Specifically, police officers were conducting surveillance on 1422

Woodhall Street.  *Id.*

One of the officers assisting in the surveillance, Officer Scott Watson, was observing the

house from his parked vehicle on an adjacent street, where he had clear vantage point of 1422

Woodhall.  *Id.* at 11.  Officer Watson focused his surveillance efforts on a gray Chevy Impala

that was parked at the house.  *Id.* at 13.  Officers have known the drivers of the gray Impala to be

involved in shootings and robberies.  *Id. 14.*  Officer Watson observed the Impala and an older

model, blue Cadillac simultaneously leave and return to 1422 Woodhall.  *Id.* at 16.  Officer

Watson then observed the vehicles leave together for a second time.  *Id.*  Officer Watson

concluded that the drivers of the Impala and the Cadillac were associated because they left and

returned at the same time, but he did not observe any contact between the occupants of the

vehicles.  *Id.* at 15.  Officers Watson radioed the movements and descriptions of the two vehicles

to other task force officers.  *Id.*

Officers Scott Wright and Felix Trevino later observed the Impala at the parking lot of a

nearby liquor store.  *Id.* at 39.  Officer Wright observed what appeared to be a drug deal between

the driver of the Impala and another individual, and radioed this information to other officers.

*Id.* at 40.  After the Impala pulled into a nearby driveway, Michigan State Trooper Charles

Barker pulled in behind the Impala.  *Id.* at 78.  Trooper Barker arrested the driver of the Impala

for possession of marijuana.  *Id.* at 80.  While under arrest, the driver of the Impala requested to

speak to an undercover officer.  *Id.*  Trooper Barker radioed this information to other officers,

and Officers Wright and Trevino arrived at the site of the arrest.  *Id.*  In an apparent attempt to

prevent his car from being impounded, the driver of the Impala told Officer Wright that he knew

of a black male, driving a late-model, blue Cadillac, who was selling a gun. *Id.* at 42. The driver of the Impala told Officer Wright that the blue Cadillac just left Woodhall Street, and he also described the caliber of the gun to Officer Wright. *Id.*

After searching for the Cadillac around the nearby neighborhoods, officers found the car at a gas station. *Id.* at 47. The officers blocked the exit of the gas station and surrounded the Cadillac. *Id.* Officer Wright approached the driver's side of the Cadillac and observed an assault rifle on the lap of the passenger. *Id.* at 48. After searching the vehicle, Officer Wright discovered a handgun tucked between the passenger seat and the center console. *Id.* at 50.

**B.     Procedural Background.**

A Grand Jury indicted Defendant on May 20, 2010, on one Count of Felon in Possession of a Firearm, in violation of 18 U.S.C. 922(g)(1). Defendant filed the instant motion to suppress on August 31, 2010. (Motion, Doc. No. 22). The Government filed its response on September 21, 2010. (Resp., Doc. No. 26).

Magistrate Judge Hluchaniuk held an evidentiary hearing on November 2, 2010, at which the Court heard the testimony of a number of officers involved in Defendant's arrest. On December 6, 2010, the Government filed a supplemental brief, requesting that the Defendant's motion be denied. (Gov. Supp. Brief, Doc. No. 35). On December 16, 2010, the defense filed a supplemental brief asserting that the officers did not have probable cause to stop Defendant's car, and therefore the evidence seized at the scene should be suppressed. (Def. Supp. Brief, Doc. No. 36).

On January 24, 2011, Magistrate Judge Hluchaniuk issued an R&R. The R&R recommended that the Court grant Defendant's motion to suppress. The Government filed an

3

objection to the R&R on February 7, 2011, asserting that Defendant's motion should be denied because the officers had reasonable suspicion to support a stop of Defendant's vehicle.

STANDARD OF REVIEW

The Sixth Circuit has stated that "a party must file timely objections with the district court to avoid waiving appellate review." *Smith v. Detroit Federation of Teachers Local*, 231, 829 F.2d 1370, 1373 (6th Cir. 1987). "[O]nly those specific objections to the magistrate's report will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *Id.* "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991).

Federal Rule of Civil Procedure 72(b)(3) provides: "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.*; 28 U.S.C. § 636(b)(1). In making this determination, the court is not required to conduct an evidentiary hearing. *See United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("[I]n providing for a 'de novo determination' rather than a de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.").

ANALYSIS

The Fourth Amendment permits an officer to make a brief investigatory stop of an individual if the officer bases his action on a "reasonable suspicion" that criminal activity may be occurring. *See United States v. Arvizu*, 534 U.S. 266 (2002); *Terry v. Ohio*, 392 U.S. 1 (1968). This type of stop by law enforcement is known as a *Terry* stop. The "level of suspicion

required for a Terry stop is. . . less demanding than that for probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1990).  Courts must look "at the totality of the circumstances" in each case to determine whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing." *Arvizu* at 273.

## A.  The Magistrate Judge's Findings.

The magistrate judge found that the officers in this case did not have a reasonable suspicion to conduct a *Terry* stop on Defendant's vehicle.  First, the magistrate judge questioned whether criminal activity was actually alleged by the informant (the driver of the Impala).  (R&R at 7).  The informant stated to Officer Wright that the driver of a blue Cadillac possessed a gun that he was intending to sell.  The magistrate judge stated that this statement alone does not necessarily allege criminal activity because a handgun can be possessed and sold legally.  *Id.* The magistrate judge further stated that it is not clear whether illegal activity could have been inferred under the circumstances.  *Id.*

Second, the magistrate judge questioned the veracity and reliability of the informant.  *Id.* at 9.  The R&R stated that there was nothing in the informant's statement to infer that he had seen the gun firsthand.  *Id.* at 9-10.  Additionally, the magistrate judge found that the informant was not a historically reliable source of information, a victim of a crime, or an unquestionably honest citizen.  *Id*. at 10.  The informant gave no specific information regarding Defendant, such as where he would be, his name, or a specific description of the handgun.  Magistrate Judge Hluchaniuk agreed with the defense's comparison of this case to *Florida v. J.L.* 529 U.S. 266 (2000).  In *J.L.*, an anonymous tipster told police that a young, black male in a plaid shirt was carrying a gun at a particular bus stop.  *Id*. at 268.  Officers arrived at the bus stop, and without

any other cause for suspicion, searched a man who fit the description given by the tipster. *Id*. The officers discovered a gun in the man's pocket. *Id.* The Supreme Court held that officers lacked a reasonable suspicion to conduct a *Terry* stop because the anonymous tip, without more, lacked reliability. *Id*. at 274. The magistrate judge stated that, like in *J.L.*, police officers in this case could only corroborate general information that identified the Defendant, but did not obtain reliable information that asserted illegality. (R&R at 15).

Finally, the magistrate judge did not find conduct by the Defendant himself that would amount to a reasonable suspicion. *Id*. at 13. Officers did not describe any furtive gesture by Defendant in this case. *See United States v. Caruthers*, 458 F.3d 459 (limited information from a tipster regarding criminal activity, combined with defendant's furtive gesture of fleeing police, amounted to reasonable suspicion of illegal conduct).

**B.    *De Novo* Review of the Magistrate Judge's Determination of Reasonable Suspicion.**

The Government objects to the magistrate judge's determination that officers did not have a reasonable suspicion to conduct a stop on Defendant's vehicle. The Court agrees with the magistrate judge's determination.

First, the Court agrees with the magistrate judge's determinations regarding the informant's reliability and veracity. The informant was not one who had not previously provided officers with reliable information in the past. *See Adams v. Williams*, 407 U.S. 143 (1972). The informant was largely unknown to Officer Wright, who had only briefly met the informant at the scene of the informant's arrest. Furthermore, the informant merely stated that the driver of the blue Cadillac was selling a gun - a statement that does not directly suggest illegal conduct. The informant also did not provide officers with any corroborating information.

6

For example, the informant did not state who the driver of the Cadillac was, what he looked like, where the Cadillac would be, or describe the gun with any detail. The officers did not have any information which they could use to substantiate the informant's tip. *See e.g. Alabama v. White*, 496 U.S. 332 (1990) (where Supreme Court found that an informant's predictive information corroborated by the observations of police officers was sufficient to establish probable cause.).

Second, although officers may infer certain aspects of criminal conduct, the observations by Officer Watson while conducting surveillance on 1422 Woodhall Street and the vague statement provided by the informant, were not sufficient to suggest a reasonable suspicion that Defendant was engaged in criminal conduct. The fact that Defendant was seen in a high-crime area, with little more, does not establish reasonable suspicion. *United States v. Lee*, 574 F.3d 309, 314 (6 Cir. 2009) ("Although the fact that the encounter occurred in a high-crime area is relevant, '[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.'")*(citing Illinois v. Wardlow*, 528 U.S. 119, 124(2000)). There was also no conduct by Defendant himself from which officers could establish a reasonable suspicion. Defendant did not make any fleeting movements and officers did not observe any otherwise suspicious activity prior to the stop.

Therefore, in looking at the totality of the circumstances, officers did not have a reasonable suspicion to conduct a stop on Defendant's vehicle.

CONCLUSION & ORDER

For the reasons stated above, the Court **ACCEPTS** and **ADOPTS** the January 24, 2011 Report and Recommendation of Magistrate Judge Michael Hluchaniuk. **ACCORDINGLY**, the

7

Court **GRANTS** Defendant's August 31, 2010 Motion to Suppress Evidence.

      **IT IS SO ORDERED**.


                        S/Sean F. Cox
                        Sean F. Cox
                        United States District Judge

Dated:  March 14, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 14, 2011, by electronic and/or ordinary mail.

                        S/Jennifer Hernandez
                        Case Manager